FILED
4/18/2022

DG/DJ:AE/KL
F. #2019R00942

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ELEMER RAFFAI,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

1:22-cr-00177(SJ)(PK)

(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1), 1347, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Background

    A.    The Medicare Program

        1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2.    Medicare was divided into multiple parts. Medicare Part B covered, among other things, costs related to durable medical equipment ("DME"), including orthotic braces such as off-the-shelf ankle braces, knee braces, elbow braces, wrist braces and hand braces (collectively, "braces"), and related equipment.

3. Medicare Part D provided prescription drug coverage to persons who were eligible for Medicare. Medicare beneficiaries obtained Part D benefits in two ways: (a) by joining a Prescription Drug Plan, which covered only prescription drugs; or (b) by joining a Medicare Advantage Plan, which covered both prescription drugs and medical services (collectively, "Part D Plans"). These Part D Plans were operated by private companies, often referred to as drug plan "sponsors," that were approved by Medicare.

4. Medicare and each of the Part D Plans were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

5. DME companies, physicians and other health care providers that provided items and services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to abide by the policies and procedures, rules and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act and applicable policies, procedures, rules and regulations issued by CMS and its authorized agents and contractors. Providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

6. If Medicare approved a provider's application, Medicare assigned the provider a Medicare Provider Identification Number ("PIN" or "provider number"). A provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for reimbursement to Medicare, which included the PIN assigned to that provider. Medicare payments were often made directly to a provider of the goods or services, rather than

to a beneficiary. This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

7. Under Medicare Parts B and D, claims submitted by DME suppliers and pharmacies (collectively, "Suppliers") for providing to beneficiaries DME and prescription drugs were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury, ordered by a physician, properly documented and actually provided as represented. Medicare did not pay claims procured through the payment of kickbacks and bribes.

8. Medicare used the terms "ordering" and "referring" provider to identify the physician or nurse practitioner who ordered, referred or certified an item or service reported in that claim. Individuals ordering or referring these items were required to have the appropriate training, qualifications, and licenses to provide such services and to order and refer such items. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the items and services were provided, the cost of the items and services, and the name and PIN of the provider or medical professional who provided the items or services or ordered or referred the items or services. Providers conveyed this information to Medicare by submitting claims using billing codes.

9. Medicare regulations required providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom items and services were provided and for whom claims for payment were submitted by the physician. Medicare required complete and accurate patient medical records so that Medicare could verify that the items and services were provided as described on the claim form.

These records were required to be sufficient to permit Medicare to review the appropriateness of Medicare payments made to the provider.

10. Medicare covered services provided through telemedicine if certain requirements were met. Telemedicine services generally involved the connection of medical providers and beneficiaries through real-time, interactive audio and video telecommunications systems to facilitate the providers' provision of medical services to the beneficiaries.

B. The Defendant and Relevant Entities and Individuals

11. The defendant ELEMER RAFFAI was a physician licensed to practice medicine in New York and was a resident of Malone, New York. RAFFAI was an orthopedic surgeon and purported to practice telemedicine. He enrolled with Medicare and certified to Medicare that he would comply with all Medicare rules and regulations and federal laws, including, among other things, that he would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that he would comply with the Federal Anti-Kickback statute.

12. The AffordADoc Network was a group of purported telemedicine companies that included the following Delaware companies that did business in the United States and Latin America: PCS CC, LLC, which also did business as "Procall," Telehealth Doctor's Network LLC, which also did business as "Video Doctor USA," and Telemed Health Group LLC, which also did business as "AffordADoc."

13. The AffordADoc Network was owned and operated by Owner-1 and Owner-2, individuals whose identities are known to the Grand Jury. Owner-1 resided in Highland Beach, Florida, and Owner-2 resided in Colombia.

II.     The Fraudulent Scheme

14.     From approximately July 2016 to approximately June 2017, the defendant ELEMER RAFFAI, together with others, executed a scheme whereby RAFFAI signed and authorized prescriptions and order forms for braces and other items: (a) that were not medically necessary; (b) for beneficiaries he had not physically examined and evaluated; (c) based solely on a short telephonic conversation; and (d) that were induced, in part, by the payment of bribes and kickbacks.

15.     The defendant ELEMER RAFFAI purported to practice telemedicine with the AffordADoc Network and other purported telemedicine companies whereby RAFFAI was paid for each purported telemedicine consultation with a beneficiary, including beneficiaries who were residents of the Eastern District of New York. In reality, RAFFAI was paid in return for prescribing and ordering DME and prescription drugs, such as braces and other items.

16.     Specifically, the defendant ELEMER RAFFAI was paid by AffordADoc Network and others to write brace orders for Medicare beneficiaries in exchange for approximately $25 or $30 per patient consultation.

17.     The defendant ELEMER RAFFAI ordered braces that were medically unnecessary, for beneficiaries with whom he lacked a pre-existing doctor-patient relationship, without a physical examination and frequently based solely on a short telephonic conversation that lasted less than three minutes.

18.     The defendant ELEMER RAFFAI and the AffordADoc Network did not bill Medicare for telemedicine consultations with the beneficiaries. Instead, the AffordADoc Network and others solicited illegal kickbacks and bribes from Suppliers for orders for braces and other items that were signed by RAFFAI and others.

19. The AffordADoc Network and other purported telemedicine companies paid or caused payments to be made to the defendant ELEMER RAFFAI and other providers to sign orders for braces and other items and cause the submission of claims for braces that were medically unnecessary and not eligible for reimbursement from Medicare, in order to increase illicit proceeds for themselves and for Suppliers who submitted fraudulent claims. Specifically, between approximately July 2016 and June 2017, the AffordADoc Network paid RAFFAI approximately $176,000.

20. In furtherance of the scheme, the defendant ELEMER RAFFAI, together with others, falsified, fabricated, altered and caused the falsification, fabrication and alteration of patient files, brace orders and other records, all to support claims to Medicare for braces that were obtained through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement and not provided as represented. For example, RAFFAI and others prepared and caused the preparation of patient files and brace orders that falsely and misleadingly stated that (i) RAFFAI determined through his interaction with a Medicare beneficiary that a particular course of treatment, including the ordering of braces, was medically necessary, and (ii) RAFFAI performed a medical evaluation.

21. The defendant ELEMER RAFFAI signed and authorized fraudulent prescriptions and orders that were forwarded by the AffordADoc Network and others to Suppliers who submitted claims to Medicare based on the orders signed by RAFFAI.

22. From approximately July 2016 to approximately June 2017, the defendant ELEMER RAFFAI, together with others, submitted and caused to be submitted approximately $10 million in false and fraudulent claims to Medicare for braces, including on behalf of

beneficiaries who were residents of the Eastern District of New York, and Medicare paid more than approximately $4 million on those claims.

## HEALTH CARE FRAUD

23. The allegations contained in paragraphs one through 22 are realleged and incorporated as if fully set forth in this paragraph.

24. In or about and between July 2016 and June 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ELEMER RAFFAI, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud one or more health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit: Medicare, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for health care benefits, items and services.

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

25. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit any property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

26. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

   (c)  has been placed beyond the jurisdiction of the court;

   (d)  has been substantially diminished in value; or

   (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

   (Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

_____
JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F. # 2019R00942
FORM DBD-34
JUN. 85

No. _____

## UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

ELEMER RAFFAI,

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1), 1347, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____Deighton Reid_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* ____

_____
*Clerk*

*Bail, $* _____

Andrew Estes, *Trial Attorney (718) 254-6250*
Kelly Lyons, *Trial Attorney (202) 923-6451*